UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN STARK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-195-NT |
| | ) | |
| HARTT TRANSPORTATION SYSTEMS, INC., | ) ) | |
| | ) | |
| Defendant | ) | |

*MEMORANDUM DECISION AND ORDER*
*ON DISCOVERY DISPUTE*

In this employment termination dispute, the parties have filed simultaneous letter briefs addressing the questions of (i) whether the plaintiff may claim a psychotherapist-patient or physician-patient privilege, (ii) if so, whether the plaintiff has forfeited either privilege by placing his physical and/or mental condition at issue, and, (iii) whether the discovery requests at issue are overbroad. Treating the discovery dispute as a motion by the defendant to compel the production of the requested discovery, I grant the motion in part and deny it in part, concluding that (i) the federal psychotherapist-patient privilege applies and has not been forfeited, (ii) there is no federal physician-patient privilege, and the state physician-patient privilege should not be applied in this case, and (iii) the discovery requests are overbroad to the extent that they seek information and records dating back to January 1, 2005.

**I. Applicable Legal Standards**

Rule 26 of the Federal Rules of Civil Procedure outlines general provisions governing discovery in a civil action:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

"[A] party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed[.]" *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 730 F. Supp. 1165, 1186 (D. Mass. 1989) (citation and internal quotation marks omitted). In addition, the proponent of a privilege bears the burden of demonstrating entitlement to its protection. *See, e.g., In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("Despite a grand jury's vaunted right to every man's evidence, it must, nevertheless, respect a valid claim of privilege. But the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived.") (citations omitted).

## II. Factual Background

The plaintiff was employed by the defendant from October 8, 2010, until December 17, 2010, as an over-the-road ("OTR") driver, based out of the defendant's Auburn terminal. Complaint, Jury Trial Requested, Injunctive Relief Sought ("Complaint") (ECF No. 1) ¶ 18; Answer to Complaint ("Answer") (ECF No. 5) ¶ 18. He alleges, in relevant part, that:

1. While driving his truck through heavy snow, he developed pain and stiffness in his neck and shoulders. Complaint ¶ 43. He had had similar symptoms three years earlier and

2

had an MRI at that time, but his symptoms resolved on their own, so he did not follow up with his doctor to discuss the results of the MRI. *Id*.

2. He informed the defendant that he was having neck pain and was seeing his doctor on December 9, 2010. *Id*. ¶ 44. When the plaintiff saw his doctor that day and brought his 2007 MRI, the doctor explained to him that he had a displaced C-5 disc. *Id*. ¶ 45. The plaintiff was unaware of that diagnosis prior to that time. *Id*.

3. The defendant scheduled the plaintiff for a Fit for Duty medical examination on December 13, 2010. *Id*. ¶ 46. During that examination, which was performed by Central Maine Conditioning Clinic ("Clinic") on behalf of the defendant, the plaintiff answered numerous questions about his displaced disc, including when and why it might have occurred. *Id*. ¶¶ 46-47. He passed the examination and was cleared to return to work that day. *Id*. ¶ 46.

4. On December 13, 2010, the Clinic faxed Rose Rogers of the defendant's Human Resources Department information regarding the plaintiff's Fit for Duty examination. *Id*. ¶¶ 48-49. The fax included a memorandum from Clinic employee Melissa Bilodeau that disclosed the results of an October 7, 2010, post-offer, pre-employment examination of the plaintiff that the Clinic had performed on behalf of the defendant. *Id*. ¶¶ 20-21, 52. Bilodeau wrote in her memorandum, "It should be noted that John never mentioned any cervical injuries at his original pre-employment assessment." *Id*. ¶ 55 (internal quotation marks omitted). The plaintiff provided truthful information regarding his medical condition during the October 7, 2010, examination. *Id*. ¶ 20.

5. Immediately following the December 13, 2010, examination, the plaintiff informed the defendant that he was fit for duty, and was told that the defendant would make its determination and contact him. *Id*. ¶ 58. Later that day, the plaintiff drove to Auburn and

3

discovered that the defendant had reassigned his truck to another driver who had already departed for North Carolina, taking the plaintiff's personal belongings and tools. *Id.* ¶ 61. No one from the defendant contacted the plaintiff to retrieve his items before the truck departed. *Id.*

      6.      From December 13 through December 17, 2010, the plaintiff made multiple calls to the defendant to inquire about being cleared to return to work and to obtain a work assignment. *Id.* ¶ 62. During that time, he spoke to Rogers multiple times. *Id.* ¶ 63. She repeatedly told him that a determination regarding his return to work was going to be made as soon as "Roberta" and Rick Parisien had a meeting. *Id.* During this period, the plaintiff called the defendant multiple times per day, but the defendant made no effort to contact the plaintiff. *Id.* ¶¶ 64-65.

      7.      During a telephone call on December 16, 2010, the defendant told the plaintiff that he was cleared for duty. *Id.* ¶ 71. The plaintiff then called the Auburn terminal for his assignments and was told to call the next morning to go over some ground rules before he was sent out on the road. *Id.* ¶¶ 72-73. On December 17, 2010, the plaintiff called the defendant and spoke with Aaron Wiles. *Id.* ¶¶ 74-75. Wiles advised the plaintiff to come to the Auburn terminal to meet him to discuss the plaintiff's return to work and some ground rules. *Id.* ¶ 76. Instead of providing the plaintiff with a work assignment, Wiles terminated his employment. *Id.* ¶ 77.

      8.      Wiles first told the plaintiff that he was being terminated because he had failed to reveal his full medical history at his post-offer, pre-employment medical examination. *Id.* ¶ 78. The plaintiff explained to him that, at the time of his October 7, 2010, medical examination, he did not know that he had any particular condition or diagnosis, and he did not learn of his diagnosis of a protruding/displaced disc until December 2010. *Id.* ¶ 84. Wiles then changed his

explanation and told the plaintiff that he was being terminated because the defendant did not think that the plaintiff liked the way things were done there. *Id*. ¶ 85. The plaintiff said that this was the second time that he had worked for the defendant, and so he knew how thing were done. *Id*. Wiles changed his explanation again and told the plaintiff that the defendant did not feel that he would be a good fit for the New England Regional operation into which the plaintiff would be transferring. *Id*. ¶ 86. The plaintiff said that he had driven New England Regional routes using his own truck in the past without issue, and so that made no sense. *Id*. Wiles changed his answer again and said that "we're just going to let you go . . . . Maine is a hire and fire at will state." *Id*. ¶ 87.

      9.      Beginning that day, the plaintiff asked the defendant several times to put the reason for his termination in writing. *Id*. ¶¶ 88-91. Finally, on April 29, 2011, the defendant provided the plaintiff with a letter stating that he was terminated because he allegedly failed to communicate with the defendant after being cleared to return to work on December 17, 2010, despite multiple attempts by Wiles to reach him. *Id*. ¶ 92.

The plaintiff claims, in relevant part, that the defendant terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., on the bases that (i) it regarded him as a person with a disability for purposes of the ADA, in particular, a person with a physical impairment, and (ii) regarded him as having a record of disability. *Id*. ¶¶ 1, 59, 100. The plaintiff alleges that he has, and the defendant regarded him as having, a displaced/degenerative disc that was causing symptoms including stiffness, throbbing between his shoulder blades, and stabbing pain that rendered him unable to work for a number of days, as well as pain and numbness in his left forearm and fingers. *Id*. ¶ 60. He further alleges that his

5

condition had an actual duration of more than six months, a fact of which the defendant was aware. *Id*.[1]

The plaintiff asserts that, as a result of the defendant's unlawful discrimination and retaliation against him, he has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses. *Id*. ¶ 108. He seeks, among other forms of relief, an order that the defendant employ him as a driver or, alternatively, an order awarding him front pay and benefits. *Id*. at 15-16.

The defendant seeks to compel responses to the following discovery requests:

1.    [Interrogatory No.] 13. Identify each and every hospital, health care facility, physician, psychiatrist, psychologist, social worker[,] counselor and other provider of medical, mental[,] or emotional health care-related services, from whom you have obtained services from January 1, 2005, until the present, identifying in your answer a summary of the services rendered by each provider, if any, and all documents relating to your answer.

2.    [RPD No.] 27. Any and all documents relating to any alleged physical, mental or emotional condition, ailment or impairment you have experienced since January 1, 2005, including, but not limited to, any diary, calendar, notebook, or other record or catalogue kept by you regarding your physical, mental or emotional health or condition and any letters, notes, or other correspondence from you to, and to you from, any health care provider regarding your physical, mental or emotional health or condition.

3.    [RPD No.] 28. A complete copy of all of your medical records, hospital records, surgical records and mental health[] records for the time period from January 1, 2005, through the present[,] including, but not limited to, any and all examinations, tests, diagnoses, treatment notes, procedures, prescriptions, laboratory results, bills and invoices relating to any medical treatment you have sought or received, records describing your condition or any treatment prescribed for or undergone by you, of and/or by any health care provider, whether or not

---

[1] The plaintiff also claims that the defendant retaliated against him in violation of the Maine Whistleblower's Protection Act, 26 M.R.S.A. § 861 *et seq*., the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq*., and the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105, for making reports and complaints protected by those laws, Complaint ¶¶ 1, 112-115, and violated the examination and confidentiality provisions of the ADA, *id*. ¶ 111.

licensed, certified or registered, in any discipline, whether physical, neurological, psychological, psychiatric, mental, emotional, or other.[2]

### III. Discussion

#### A. The Parties' Positions

##### 1. Plaintiff

The plaintiff contends that:

1.  His medical records are irrelevant to his claims that the defendant discriminated against him in violation of the ADA because it regarded him as disabled and because he had a record of disability. *See* Plaintiff's Letter Brief dated January 2, 2013 ("Plaintiff's Brief") at 1-2. These claims hinge on the defendant's information and/or perceptions about the plaintiff's condition, not his actual condition as reflected in his medical records. *See id.*

2.  To the extent that any of the seven years of medical records requested by the defendant are relevant, they are subject to both the physician-patient and psychotherapist-patient privileges. *See id.* at 2-3.

3.  The fact that the plaintiff alleges that he has suffered "garden variety" emotional distress does not constitute a waiver of the privilege, and he has not otherwise placed his mental state at issue. *See id.* at 3-4.

4.  To the extent that some of the plaintiff's medical records may be relevant to his ADA claims, the request for all records relating to his physical and mental health treatment over the course of seven years is unreasonably broad and unduly burdensome. *See id.* at 4. The request should be limited to the subject matter and time period relevant to the allegations in the complaint; namely, records bearing on the plaintiff's cervical injury of 2010 and his prior

---

[2] A copy of these discovery requests, together with the plaintiff's responses thereto, was attached to an email to the court dated December 14, 2012, from Attorney Melinda Caterine seeking the court's assistance with respect to these and other discovery disputes.

7

cervical injury of 2007, which is the only medical condition "really and genuinely in controversy." *Id*. (quoting *Sarko v. Penn-Del Directory Co*., 170 F.R.D. 127, 131 (E.D. Pa. 1997)).

### 2. Defendant

The defendant argues that:

1.     The plaintiff's medical records are relevant to the establishment of a *prima facie* case of disability discrimination.  *See* Defendant's Letter Brief dated January 2, 201[3] ("Defendant's Brief") at 1-2.  Even though the plaintiff proceeds on the theories that he was perceived as disabled and had a record of disability, rather than that he was actually disabled, he still must establish that he was qualified to perform the essential functions of the job with or without a reasonable accommodation.  *See id*.  Mental health conditions can disqualify a person from receiving the DOT medical certification required to drive a commercial motor vehicle, and the defendant has reason to believe that the plaintiff, who has mental health issues, may not have provided complete information when he initially obtained his DOT medical certification.  *See id*. at 2.

2.     The physician-patient and psychotherapist-patient privileges are inapplicable in this case.  *See id*. at 2.  While, when both federal and state claims are asserted, the court can recognize such evidentiary privileges based on state law, such recognition is not appropriate here.  *See id*. at 2-3.

3.     In any event, even if the recognition of a privilege is appropriate, the plaintiff has put his medical conditions at issue in this case by alleging that he has a record of disability and was perceived as having a disability, thereby waiving any privilege.  *See id*. at 3-4.  The

defendant is entitled to review the plaintiff's medical records to defend against the plaintiff's claims, including by asserting an "after-acquired evidence" defense. *See id*. at 4.

    4.     The plaintiff alleges more than a garden-variety emotional distress claim, thereby waiving any applicable privilege. *See id*. at 4-5.

    5.     The defendant is entitled to the plaintiff's medical records to defend against his request for reinstatement, which requires that he demonstrate that he is able to perform the essential functions of the driver job. *See id*. at 5.

    6.     In this ADA case, no narrowing of the defendant's document requests is appropriate. *See id*. The plaintiff's medical records are relevant in their entirety. *See id*.

### B. Relevance

Setting aside the question of whether the defendant's discovery requests are overbroad, the defendant is correct as a general matter that the plaintiff's medical records pertaining to both physical and mental health treatment are relevant to this case. Specifically, those records are relevant to:

    1.     Whether the plaintiff is a "qualified individual" with a disability, that is, able to perform the essential physical and mental functions of the driver's job, a showing that must be made with respect to claims based on being regarded as disabled or having a record of disability as well as those based on actual disability, *see, e.g.*, 42 U.S.C. §§ 12112(a) (prohibiting discrimination "against a qualified individual on the basis of disability"), 12111(8) (defining "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"); *Garner v. Chevron Phillips Chem. Co*., 834 F. Supp.2d 528 (S.D. Tex. 2011) (plaintiff established a *prima facie* case of discrimination under the ADA by showing "that (1) she is disabled, has a record of

9

having a disability, or is viewed as disabled; (2) she is a qualified individual; (3) she was subjected to an adverse employment action on account of her disability; and (4) she was replaced by, or treated less favorably than, non-disabled employees.");[3]

2. The plaintiff's request for reinstatement, which requires that he prove his ability to perform the essential functions of the driver's job, *see, e.g., Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 342 (N.D. Ill. 2007) ("Count I seeks reinstatement to the same or greater position than the plaintiff enjoyed when his illness required him to take a six-month leave of absence. The medical records could not be more relevant to that remedy, which is equitable in nature and is granted only if appropriate. If the plaintiff cannot perform the essential functions of the employment position to which he seeks reinstatement, reinstatement, at least arguably, would not be an appropriate remedy.") (citations and internal quotation marks omitted);

3. The plaintiff's claim for emotional distress damages, *see, e.g., EEOC v. Kohl's Dep't Stores, Inc.*, No. 2:11-cv-320-JAW, 2012 WL 639693, at *2 (D. Me. Feb. 27, 2012) (employer properly sought medical records, at least for limited time period, to explore claimed emotional distress damages); *EEOC v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *7 (M.D.N.C. June 13, 2007) ("[C]ourts overwhelmingly hold that employers are entitled to Rule 26 discovery of medical records even in so-called 'garden-variety' employment cases where plaintiffs allege damages due to emotional distress."); and

---

[3] As the defendant points out, *see* Defendant's Brief at 2, federal motor carrier safety regulations require that an individual be medically certified as physically qualified to operate a commercial motor vehicle, *see* 49 C.F.R. § 391.41(a)(1)(i). "A person is physically qualified to drive a commercial motor vehicle" if, *inter alia*, he or she "[h]as no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely[.]" *Id.* § 391.41(a)(3)(i) & (b)(9). This standard bears on whether an individual is a "qualified individual" for purposes of the ADA. *See, e.g., Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974-75 (7th Cir. 2000) ("It was not until Dr. Pieper determined that Bay was qualified to drive pursuant to DOT standards that he was 'otherwise qualified' under the ADA."). The defendant indicates that it wishes to explore whether the plaintiff was entitled to the DOT medical certification that he possessed, given its belief that the plaintiff may not have provided complete information when he initially obtained the certification, and the statement of the plaintiff's counsel that the plaintiff was being treated for some mental health issues. *See* Defendant's Brief at 2, 4.

4.     The defendant's after-acquired evidence defense, pursuant to which the scope of available remedies would be narrowed to the extent that the defendant could show that it would have terminated the plaintiff's employment on the basis of the later-acquired evidence if it had timely acquired it (*e.g.*, that had the plaintiff's mental and/or physical health information been timely disclosed, it would have prevented him from qualifying as a commercial driver). *See Palmquist v. Shinseki*, 729 F. Supp.2d 425, 429 (D. Me. 2010) ("Even though after-acquired evidence of an employee's wrongdoing is not relevant for purposes of employer liability, . . . such evidence must be taken into account lest the employer's legitimate concerns be ignored when determining the proper boundaries of remedial relief.") (citations and internal punctuation omitted).[4]

### C.  Applicability of Privileges

#### 1.  Psychotherapist-Patient Privilege

Even assuming the relevance of the requested documents, the plaintiff invokes both the physician-patient and psychotherapist-patient privileges to shield them from discovery. *See* Plaintiff's Brief at 2-4.  The defendant incorrectly argues that the psychotherapist-patient privilege is inapplicable. *See* Defendant's Brief at 2-3.  As the plaintiff observes, *see* Plaintiff's Brief at 3, the Supreme Court recognized a federal psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996), *see Jaffee*, 518 U.S. at 15 ("Because we agree with the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth, we hold that confidential communications between a licensed

---

[4] For purposes of the instant dispute, I need not determine whether, as the plaintiff asserts, his medical records are irrelevant to the discrete questions of whether he had a record of disability, or was regarded as disabled, pursuant to the ADA.  *See* Plaintiff's Brief at 1-2.  As discussed above, the records are relevant to whether he was a qualified individual for purposes of the ADA and to the scope of his available remedies thereunder.

psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.") (citation, internal quotation marks, and footnote omitted).

There is no evidence that the plaintiff has affirmatively waived his psychotherapist-patient privilege. Thus, it applies unless, as the defendant contends, he has forfeited it by placing his mental health at issue. *See, e.g., In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("[W]here the holder made no representation, express or implied, that he intended to surrender his privilege, the applicable principle is perhaps more aptly termed one of forfeiture, rather than waiver[.]") (citation and internal quotation marks omitted); *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp.2d 983, 986 (N.D. Ill. 2010) ("It is only when a party puts his mental state in issue through some action of his own designed to advance his interests in the case (such as by claiming a disability involving his mental state, by basing his claim upon the psychotherapist's communications with him, or selectively disclosing part of a privileged communication) that the privilege is waived.") (citation and footnote omitted). I address that matter below.

### 2. Physician-Patient Privilege

The plaintiff effectively acknowledges that there is no federal physician-patient privilege, pressing for the application in this case of the Maine version of that privilege, set forth in Maine Rule of Evidence 503. *See* Plaintiff's Brief at 2-3; *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133 (N.D.N.Y 2009) (noting that the Supreme Court has not recognized a federal physician-patient privilege); *see also* Me. R. Evid. 503(b) ("A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's health care professional,

mental health professional, or licensed counseling professional, and persons who are participating in the diagnosis or treatment under the direction of said professionals, including members of the patient's family.").

The question of whether the Maine privilege ought to be applied in this case is governed by Rule 501 of the Federal Rules of Evidence. *See, e.g.*, *Thayer v. Eastern Me. Med. Ctr.*, No. 1:09-cv-19-B-S, 2009 WL 1686673, at *2 (D. Me. June 16, 2009). "Where a federal civil action involves combined state and federal law claims, as here, and the asserted privilege is relevant to both claims, federal courts have consistently ruled that privileges are governed by federal law, not state law." *Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994). "State privilege law should govern in combined state-federal cases only when the state law issues predominate over the federal issues, a situation that poses a real danger of forum shopping." *Id*. The plaintiff's state law claims do not predominate over his ADA claims. *See generally* Complaint; *see also, e.g., Green*, 157 F.R.D. at 139 (while two of three counts were state law claims, gravamen of complaint was violation of plaintiff's federal constitutional right to be free from excessive force).

In cases in which state law claims do not predominate, "the First Circuit has adopted a balancing test, weighing the respective federal and state interests, for determining when the federal common law should recognize state evidentiary privileges as a matter of comity in federal question cases." *Id*. at 139-40 (citing *In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981)). Pursuant to the *Hampers* analysis, the federal court must determine, first, whether the state court would recognize an evidentiary privilege and, second, whether that privilege is "intrinsically meritorious." *Id*. at 140 (quoting *Hampers*, 651 F.2d at 22). The latter analysis entails consideration of four factors: (i) "whether the communications originate in a confidence that they will not be disclosed[,]" (ii) "whether this element of confidentiality is essential to the full and

13

satisfactory maintenance of the relation between the parties[,]" (iii) whether the relationship is "a vital one" that "ought to be sedulously fostered[,]" and (iv) "whether the injury that would inure to the relation by the disclosure of the communications (would be) greater than the benefit thereby gained for the correct disposal of litigation." *Hampers*, 651 F.2d at 23 (citations and internal quotation marks omitted).

The plaintiff, whose burden it is to demonstrate the application of a privilege, *see, e.g., Keeper of Records,* 348 F.3d at 22, fails to address why, pursuant to the *Hampers* test, the Maine physician-patient privilege should be applied in this case, *see generally* Plaintiff's Brief.  He does cite *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1 (D. Me. 2000), for the proposition that this court has recognized that, given the significant policy considerations leading to the adoption of the physician-patient privilege in Maine, disclosure should be ordered only in narrowly tailored circumstances. *See id*. at 3. Yet, *Marshall* does not help him. In *Marshall*, the court concluded, with respect to the first prong of the *Hampers* analysis, that the materials at issue would be confidential and privileged pursuant to Maine's statutory peer review privilege, rejecting an argument that the privilege had been waived. *See Marshall*, 198 F.RD. at 4. In this case, by contrast, the plaintiff has placed his physical condition at issue, arguing that his cervical disc displacement, both as perceived by the defendant and as known to the defendant through a record of that impairment, formed a basis for his unlawful discharge pursuant to the ADA. Hence, he cannot claim any physician-patient privilege with respect to that condition. *See* Me. R. Evid. 503(e)(3) ("There is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or defense of the patient[.]").

In any event, the *Marshall* court ultimately declined to recognize a peer review privilege on the strength of the second prong of the *Hampers* analysis after balancing "the interest served by the state privilege against the federal interest in favor of disclosure." *Marshall*, 198 F.R.D. at 4. The court reasoned that the nature of the parties' dispute, which concerned an alleged abuse of the peer review process, did not implicate the concern animating the peer review privilege: that patient care would suffer if physicians' candid comments were used in malpractice or other cases to form a basis of liability. *See id*. at 5. In addition, it observed that some of the information sought to be shielded by the privilege had already been disclosed. *See id*.

In these circumstances, as well, a balancing of the interests served by the physician-patient privilege against the federal interest in favor of disclosure counsels against recognizing a physician-patient privilege. The Maine physician-patient privilege "serve[s] to facilitate candor in [an] important relationship[] that rel[ies] on the sharing of sensitive, confidential information." *State v. Tracy*, 2010 ME 27, ¶ 17; 991 A.2d 821, 826. Yet, the plaintiff himself has opened the door to the sharing of otherwise confidential information by bringing an ADA claim in which he has placed his physical condition at issue. His medical records bear on both liability (whether he is a "qualified" individual with a disability) and the appropriate scope of relief (for example, whether he would qualify to be reinstated or his remedies should be limited as a result of after-acquired evidence). While he may continue to wish to shield his medical records from the public, any such understandable concern can be addressed by means of the confidentiality order already entered in this case. *See* ECF No. 13.

For these reasons, the plaintiff properly invokes the psychotherapist-patient privilege, but not the physician-patient privilege.

### D. Forfeiture of Privilege

I next consider whether the plaintiff has effectively forfeited the psychotherapist-patient privilege by placing his mental condition at issue. He contends that he has not done so and that his allegation that he suffered from "garden-variety" emotional distress does not constitute a waiver of the privilege or open the door to the production of his medical records. *See* Plaintiff's Brief at 3-4. The defendant argues that the plaintiff seeks more than garden-variety emotional distress damages, thereby waiving any privilege. *See* Defendant's Brief at 4-5. It also claims entitlement to all requested medical records, including those reflecting any mental health treatment, for purposes of (i) challenging the plaintiff's claim that he is a "qualified individual," (ii) potentially raising an after-acquired evidence defense, and (iii) defending against the plaintiff's claims for emotional distress damages and for reinstatement. *See id*. at 1-2, 4-5. The plaintiff has the better argument.

This court has held that a claim for garden-variety emotional distress damages does not waive the psychotherapist-patient privilege, reasoning that "[c]laims for incidental emotional distress damages merely seek recompense for those emotional injuries that are likely to arise as a fair consequence of an underlying tort" and, "[i]n this way, they do not make recourse to the substance of a privileged communication[.]" *Morrisette v. Kennebec County*, No. Civ. 01-01-B-S, 2001 WL 969014, at *1-*2 (D. Me. Aug. 21, 2001).

The plaintiff alleges that, *as a result* of the defendant's unlawful discrimination and retaliation against him, he suffered, *inter alia*, loss of enjoyment of life, loss of self-esteem, and humiliation. *See* Complaint ¶ 108. This amounts to a claim for emotional injuries arising as a fair consequence of the underlying claimed wrongful acts. *See Morrisette*, 2001 WL 969014, at *2; *see also, e.g., Willey v. Kirkpatrick*, No. 07-CV-6484CJS, 2011 WL 4368692, at *3

(W.D.N.Y. Sept. 19, 2011) ("Garden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; claims for serious distress refer to claims for the inducement or aggravation of a diagnosable dysfunction or equivalent injury.") (citation and internal quotation marks omitted). Accordingly, it does not effectuate a waiver, or forfeiture, of the plaintiff's psychotherapist-patient privilege. *See, e.g., Ortiz-Carballo v. Ellspermann*, No. 5:08-cv-165-Oc-10GRJ, 2009 WL 961131, at *2 (M.D. Fla. Apr. 7, 2009) (plaintiff did not forfeit psychotherapist-patient privilege by alleging that he had suffered, *inter alia*, emotional distress, loss of enjoyment of life, and mental anguish); *Morrisette*, 2001 WL 969014, at *1-*2.

The Complaint is otherwise devoid of any mention of the plaintiff's mental condition. *See generally* Complaint. The fact that the plaintiff's mental health records are relevant – even potentially highly relevant and valuable to the defense – does not suffice to overcome the federal psychotherapist-patient privilege. *See, e.g., Jaffee*, 518 U.S. at 17 ("We part company with the Court of Appeals on a separate point. We reject the balancing component of the privilege implemented by that court and a small number of States. Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.") (footnote omitted); *United States v. Salerno*, 505 U.S. 317, 323 (1992) ("Parties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the evidence might contradict."); *Sims*, 534 F.3d at 134 ("[A] party's psychotherapist-patient privilege is not overcome when his mental state is put in issue only by [] another party[.]"); *Kronenberg*, 747 F. Supp.2d at 990 (rejecting defendant employer's argument that ADA plaintiff had forfeited psychotherapist-patient privilege merely by claiming to be a

17

"qualified individual" under the ADA and by seeking reinstatement; noting, "If [the employer's] argument were accepted, the consequences to the psychotherapist-patient privilege in any ADA case – especially one in which a plaintiff was seeking reinstatement – would be devastating: the privilege would effectively cease to exist.").

The psychotherapist-patient privilege, therefore, shields from production to the defendant all requested information and medical records that come within its scope.[5]

### E. Scope of Discovery Requests

The plaintiff characterizes the defendant's request for all records relating to his physical and mental health treatment received over the course of the past seven years as unreasonably broad and unduly burdensome, arguing that the records sought are entirely irrelevant to his ADA claims. *See* Plaintiff's Brief at 4. He contends that, at most, he should be required to produce records relating to his cervical injury of 2010 and his prior cervical injury of 2007, the sole medical condition truly in controversy. *See id.* The defendant, by contrast, continues to press for the production of all requested medical records, all of which, it contends, are discoverable in this ADA case. *See* Defendant's Brief at 5.

To the extent that the defendant seeks medical information and records dating back to January 1, 2005, the request is overbroad. The plaintiff did not commence employment with the defendant until October 8, 2010. *See* Complaint ¶ 18; Answer ¶ 18. Although the defendant should be allowed some leeway to examine records predating that time to assess the plaintiff's allegations that, as of that time, he was a "qualified individual," and that he provided accurate

---

[5] The psychotherapist-patient privilege "does not extend to information regarding the occurrence of treatment, including whether a psychotherapist treated [the privilege holder], the dates of such treatment, and the length of treatment on each date." *Perry v. City of New Haven*, No. 3:11CV1485(RNC), 2012 WL 3887061, at *2 (D. Conn. Sept. 6, 2012) (citations and internal quotation marks omitted).

information during his post-offer, pre-employment physical examination, no reason appears why the defendant should be permitted to examine records for the period predating 2007, when the plaintiff alleges that he suffered symptoms similar to those he experienced in 2010. Therefore, I limit the requests made in Interrogatory No. 13 and RPD Nos. 27 and 28 to the period commencing on January 1, 2007. The defendant's request for information and records extending to the present time, on the other hand, is reasonable. Such information and records are relevant to the appropriate scope of damages/relief; for example, whether the plaintiff is eligible for reinstatement and whether the defendant may raise an after-acquired evidence defense.

I decline to limit the subject matter of the requested discovery to the plaintiff's cervical injuries. The plaintiff's medical records, for the time period as limited above, are generally relevant both to liability (whether the plaintiff is a qualified individual for purposes of the ADA) and the appropriate scope of damages and other requested relief.

## IV. Conclusion

For the foregoing reasons, and treating the instant discovery dispute as a motion by the defendant to compel the production of the information requested by Interrogatory No. 13 and the documents requested by RPD Nos. 27 and 28, the motion is **GRANTED**, except to the extent that (i) the time frame of said requests is **MODIFIED** to commence on January 1, 2007, and (ii) the plaintiff may claim a psychotherapist-patient privilege, and otherwise **DENIED**. The plaintiff is **DIRECTED** to produce to the defendant, within 14 days of the date of this Order, non-privileged information and documents responsive to these discovery requests as modified, together with a privilege log describing, in accordance with Federal Rule of Civil Procedure 26(b)(5)(A), documents withheld on the basis of claimed privilege.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 28th day of January, 2013.

                                        /s/ John H. Rich III
                                        John H. Rich III
                                        United States Magistrate Judge